Commonwealth *v.* Collins, Appellant.

Argued May 5, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused December 19, 1969.

116

*Robert H. Chase* and *James D. McDonald, Jr.,* for appellant.

*Richard D. Agresti,* Assistant District Attorney, with him *William E. Pfadt,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, November 11, 1969:

This is an appeal by Royall Collins from the judgment of sentence of the Court of Oyer and Terminer of Erie County. Appellant, after a trial by jury, was found guilty of second degree murder, and after denial of his post-trial motions, was sentenced to a term of ten to twenty years imprisonment.

The facts are set forth in the opinion of the court below:

"On the evening of April 26, 1967, Norman W. Stanyard, Jr., age 16, who had run away from home and had only been in Erie for a few days, met three negro youths in the home of Charlie Porter, who at that time lived at 139 West 19 Street in the City of Erie. These boys were subsequently identified as the defendant, Melvin Carr and Eddie Seawright. They later left the home and drove away in an automobile owned by Collins and at that time operated by him. According to the defendant they dropped Stanyard off at the corner of 18th and Parade Streets, and did not see him again that night. Stanyard, on the other hand, testified that one of them asked him while they were still at Porter's house if he wanted to make some money. He was also

shown a gun, which was later given to him, and the robbery of the Spur Gas Station was discussed. He stated that they went directly to the Spur Gas Station at 16th and Parade Streets, that the car was parked in an alley, that he and one of the three boys got out of the car, but that he alone went to the station where he robbed the attendant. Upon leaving he gave the proceeds of the robbery to one of the boys and they ran back to the automobile where the other two were sitting, and drove off.

"Following this incident they drove around and discussed perpetrating another robbery. During their travels they checked several bars, but finally decided on Steve's Diner at 16th and State Streets. When they drove past this restaurant they directed Stanyard to lie on the floor. He was then told to go in, that there wasn't anyone there but an old lady, and to ask for the 'BIG MONEY IN THE BOX UNDER THE COUNTER'.

"Stanyard and one other boy alighted from the car while the other two remained in the automobile with the motor running. Stanyard then entered the lunch room alone. He saw a lady going down the cellar steps and at the same time the deceased came out of a back room. Stanyard pointed the gun at him and asked him for his money. Fytikas ducked behind the counter, [and] Stanyard, thinking he was going for a gun, fired, striking him, and he died a short time later.

"According to Stanyard his three companions fled in the automobile while he attempted to get back to Porter's house on foot. He was accosted by a police officer in the vicinity of the Holiday Inn, a short distance from the scene of the shooting. Stanyard pointed the gun at the police officer and escaped, only to be apprehended a few hours later. Counsel was appointed for him and he immediately cooperated with the authorities, giving a statement of the facts briefly out-

lined above. Thereafter, he entered a plea of guilty to murder generally. He was found guilty of Murder in the First Degree by the Court En Banc, and sentenced to life imprisonment. Both Carr and Collins were found guilty in separate trials of Murder in the Second Degree while Seawright was acquitted."

Appellant, by his very able counsel, makes eight arguments on this appeal. Several of these can be disposed of briefly. Appellant complains of the court's allegedly inadequate charge on the dangers of accomplice testimony. There is absolutely no merit to such a claim.

Nor did the court below err in refusing to grant a new trial on the ground of after-discovered evidence. The basis for such a request was Stanyard's repudiation in prison, by a note written to his lawyer, of his testimony at trial that appellant was involved in the crime. As this Court pointed out in *Commonwealth v. Schuck*, 401 Pa. 222, 229, 164 A. 2d 13 (1960), in order to justify the grant of a new trial on the basis of after-discovered evidence, the evidence, *inter alia*, must be such as would likely compel a different result. Since Stanyard at the trial of Collins' codefendants repudiated his repudiation, attributing it to coercion on Collins' part, the letter was hardly such evidence as would likely compel a different result.

A third contention deserving only brief mention is the argument that the identification testimony of Lt. Lupo violated appellant's right to due process as set forth in *Stovall v. Denno*, 388 U.S. 293, 87 S. Ct. 1967 (1967). We agree with the court below that appellant waived this issue by failing to object below.

Appellant next launches a broad-based attack upon the court's overruling his demurrer to the Commonwealth's evidence. He contends first that, as a factual matter, the court erred, since the Commonwealth's evi-

dence could not support a guilty verdict. We disagree. Although a full-scale assault was made upon Stanyard's credibility, nonetheless his testimony, if believed, combined with other testimony, including Lt. Lupo's, was certainly enough to support the verdict.

Appellant replies that if this is so, it is only for the reason that the court applied an improper standard in overruling the demurrer. Appellant recognizes that the standard in ruling upon a demurrer is that set forth in *Commonwealth v. Dennis*, 211 Pa. Superior Ct. 37, 40, 234 A. 2d 53 (1967) : ". . . whether the evidence of record and the inferences reasonably drawn therefrom would support a verdict of guilty." However, he contends that this standard is unconstitutional for it flies in the face of the presumption of innocence. We cannot see how this is so, for in order for the evidence to support a verdict of guilty it must be "sufficient to warrant the jury in finding the defendant guilty *beyond a reasonable doubt.*" (Emphasis added). *Commonwealth v. Byrd*, 19 Beaver 215 (1957) ; see also *Commonwealth v. Hagy*, 58 Lanc. Rev. 47 (1962) and *Commonwealth v. Kauffman*, 53 Lanc. Rev. 189 (1952). Not only does this not violate the presumption of innocence, but any standard more favorable to the defendant would remove the jury from its traditional function as the trier of fact.

In appellant's fifth argument, he seeks a new trial on the ground that the court below erred in charging the jury that they could return, *inter alia*, a verdict of guilty of second degree murder. He argues that the Commonwealth's evidence showed, if anything, a felony-murder, a murder committed in the commission of a robbery. §701 of the Act of June 24, 1939, P. L. 872, 18 P.S. §4701, provides as follows: "All murder . . . which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, bur-

glary, or kidnapping, shall be murder in the first degree." Appellant thus argues that his crime, if anything, was first degree murder, and that the jury was allowed to compromise a weak case by finding appellant guilty of murder in the second degree. What appellant overlooks, however, is the next sentence of §701: "The jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict whether the person is guilty of murder of the first or second degree." As far back as *Lane v. The Commonwealth,* 59 Pa. 371 (1869), and as recently as *Commonwealth v. Meas,* 415 Pa. 41, 202 A. 2d 74 (1964), we have consistently held that not only is it not error to charge on second degree in a felony-murder case, but that it is error not so to charge. Where, as here, the evidence would support a verdict of first degree murder, the jury is nonetheless permitted to exercise its mercy and convict only of second degree.

Sixth, appellant complains that the court below erred in admitting Stanyard's identification testimony. The admission of such testimony was well within the confines of due process as set forth in *Stovall v. Denno,* supra, and this is made clear in the lengthy analysis in the opinion below. Appellant admitted in his own testimony that he and Stanyard were together on the night of the murder; so there is no real question of Stanyard's opportunity to observe appellant. The real issue is not one of identification, but rather whether appellant and Stanyard separated at 18th Street or continued on together to rob the gas station and commit the attempted robbery and murder of the deceased.

Appellant's final two contentions are more troublesome, and it is here that we must part company with the analysis of the court below. Appellant urges that the court erred in failing to suppress his oral state-

ment, which he claims was obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966). The Commonwealth points to a "waiver" appellant signed, setting forth the *Miranda* warnings and stating that he had read the catalogue of his rights and was willing to make a statement. Appellant replies that this "waiver" was ineffective because it is undisputed that at the time he signed it, he had not been informed of the nature of the crime for which he was to be questioned.

In *Miranda* itself, the Court stated, at page 475: "The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but *intelligently and understandingly* rejected the offer. Anything less is not waiver." (Emphasis added). High standards of proof are always required where a waiver of constitutional rights is involved. *Johnson v. Zerbst,* 304 U.S. 458, 58 S. Ct. 1019 (1938). We agree with appellant that an intelligent and understanding waiver of the right to counsel is impossible where the defendant has not been informed of the crime which is being investigated. It is a far different thing to forego a lawyer where a traffic offense is involved than to waive counsel where first degree murder is at stake.

The court below was of the view that so long as appellant knew why he was being held when the questioning began, that is enough. We cannot agree. The crucial moment is the time the waiver is signed. Once an accused has signed the waiver stating that he is willing to give a statement, it is no longer efficacious that he then be told what he is being questioned about. The compulsive force of the unintelligent waiver has already had its effect. We thus hold that it was error to admit appellant's statement.

However, we also hold that the error was harmless beyond a reasonable doubt. *Chapman v. California,*

122

386 U.S. 18, 87 S. Ct. 824 (1967). The statement merely related that appellant picked up Stanyard at Charlie Porter's at 139 West 19th Street, and that he and two others drove Stanyard to 18th and Parade. This statement could not have harmed appellant, for his own testimony at trial was identical. *Com. ex rel. Adderley v. Myers,* 418 Pa. 366, 211 A. 2d 481 (1965).

Finally, appellant complains that the court erred in permitting Stanyard to testify, when appellant's evidence showed that he was incompetent. This evidence indicated that Stanyard was a sociopathic personality unable to determine and relate truth on its own merit because "truth" as he saw it was that set of facts which, in a given situation, benefited him the most. When Stanyard was called to testify, the defense interposed an objection on the grounds of competency. The court below then stated: "The Court, having observed the witness Stanyard testifying at a suppression hearing on September 7th, will rule preliminarily that he is competent, mentally competent as a witness, to testify in this case, and note an exception for counsel for the defendant." The court permitted appellant's psychologists to place in evidence their testimony as to Stanyard's inability to tell the truth, but held that their testimony could only go to credibility and could not render Stanyard incompetent. The court relied on the Act of May 23, 1887, P. L. 158, §1, 19 P.S. §681, which provides in relevant part: ". . . except . . . as provided in section two of this act, all persons shall be fully competent witnesses in any criminal proceeding before any tribunal." Since the exceptions enunciated in §2 of the Act were not relevant to this case, the court concluded that testimony, if believed, as to mental illness making Stanyard incapable of telling the truth could not render him incompetent to testify.

Despite the language of the Act, it is apparent that in Pennsylvania, a witness' inability to tell the truth has always been cause to render him incompetent to testify. The Act of 1887, like its predecessor Act of 1869, has been held to deal solely with the competency of interested, as distinguished from disinterested witnesses, despite its apparently broader language. *Dickson v. McGraw Bros.*, 151 Pa. 98, 100, 24 Atl. 1043 (1892); *Tioga County v. South Creek Township*, 75 Pa. 433, 437 (1874); 2 Henry, Pennsylvania Evidence, §762.

For instance, in *Commonwealth v. Repyneck*, 181 Pa. Superior Ct. 630, 124 A. 2d 693 (1956), the defendant objected to the witness Konchick's testifying because, as is also alleged here, he "lacked sufficient understanding to comprehend the obligation of an oath." The Court then described the procedure taken: *"Thereupon the jury was withdrawn from the courtroom and the court below heard testimony relative to the competency of the witness. This was proper and in accordance with accepted practice."* (Emphasis added). The testimony of the psychiatrist and psychologist there was similar to that here—that the witness was a sociopathic personality whose view of the truth depended on what was best for him at the moment. The lower court there, quite within its power, chose not to believe the defense witnesses and found Ronchick competent. The important thing for our purposes, however, is the recognition that the inability to tell the truth is a matter of competency and not just credibility. See also *Commonwealth v. Kosh*, 305 Pa. 146, 157 Atl. 479 (1931), where this Court stated: "The question of the mental soundness of one offered as a witness in its bearing on his competency has often been declared to be a question for the trial court," and numerous cases dealing with the competency of young children. It is clear that there has developed, and

124

properly so, a gloss upon the statute dealing with those whose mental condition prevents them from telling the truth. In Wigmore's words, "an independent testimonial requirement exists, in the shape of a sense of moral responsibility to speak the truth." II Wigmore, §495 (3d Ed. 1940).

It therefore follows that the court below was in error in its belief that the grounds asserted by appellant could not, even if believed, render Stanyard incompetent. However, in view of the strong presumption of competency and the fact that all of the evidence dealing with Stanyard's alleged mental disorder was submitted to the jury, we do not believe that this error was of the magnitude that requires reversal.

The judgment is affirmed.

Mr. Chief Justice BELL, Mr. Justice EAGEN, Mr. Justice ROBERTS, and Mr. Justice POMEROY concur in the result.