Royall **COLLINS**

v.

Joseph R. **BRIERLEY**, Supt.

Civ. A. No. 46–71 Erie.

United States District Court,
W. D. Pennsylvania.

Nov. 2, 1971.

## OPINION AND ORDER GRANTING WRIT OF HABEAS CORPUS

KNOX, District Judge.

In this application for writ of habeas corpus brought by a state prisoner presently incarcerated in the Pennsylvania Western Correctional Institution at Pittsburgh under a sentence for a term of 10–20 years following conviction of second degree murder in the Court of Common Pleas of Erie County, Pennsylvania, we feel impelled to grant the writ. We have concluded to do so because we are bound by the decision of the Supreme Court of the United States in Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968).

Applicant's sentence stems from his conviction in connection with the murder of Nicholas Fytikas, the operator of an establishment known as Steve's Dinor in Erie who was shot to death during a holdup in his place of business on April 27, 1967. Four persons were charged with the crime.

Norman Stanyard, who actually fired the shots, pleaded guilty to murder generally and was convicted of murder in the first degree. The other three alleged accomplices, petitioner, Carr and Seawright were tried separately. Petitioner

and Carr were convicted of murder in the second degree. Seawright was acquitted. (see p. 7 N.T.) While we recognize that generally the determination of guilt or innocence of the accused is exclusively a matter to be determined by the state courts and the federal courts are only concerned with the question whether constitutional safeguards were adequately observed during the proceedings nevertheless, these disparate results as to three alleged to be equally implicated do give one pause.

■ Petitioner has presented to this court five reasons why the writ of habeas corpus should be granted. He had previously presented the same five points to the Court of Common Pleas and to the Supreme Court of Pennsylvania who overruled them and affirmed his conviction. Commonwealth v. Collins, 436 Pa. 114, 259 A.2d 160 (1969). Since these same five points had previously been presented to the state courts, we concluded that petitioner had exhausted his state remedies under the decision of the Court of Appeals for the Third Circuit in United States ex rel. Bennett v. Rundle, 419 F.2d 599 (3d cir. 1969). Application to the U. S. Supreme Court for certiorari is not necessary. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Under these circumstances, it was not necessary for petitioner to again go through the vain procedure of presenting a petition under the Pennsylvania Post-Conviction Hearing Act. We, therefore, ordered an evidentiary hearing with respect to this matter which was duly held on Friday, September 10, 1971, at Erie, Pennsylvania. At this hearing ample opportunity was given petitioner and his counsel to present such evidence as they deemed necessary. We have concluded that four of petitioner's reasons for setting aside his conviction and granting the writ of habeas corpus are baseless as far as this court is concerned.

■ One: *The Recantation of Stanyard's Testimony.* Following petitioner's trial, Stanyard who had been the main witness against him sent a letter to petitioner's attorney that his testimony against petitioner was not true and stating contrary to his testimony at trial that the last time he had seen petitioner prior to the commission of the crime was when petitioner gave him a ride to 18th and Parade Streets, Erie, Pennsylvania, approximately two blocks from the scene of the first holdup committed by Stanyard that evening. Stanyard stated that was the last time he had seen petitioner or the other two alleged culprits. He claims he had testified under promises that if he brought in Collins and the other two, he would not get a heavy sentence.

The matter of this letter was thoroughly considered by the Court of Common Pleas and by the Supreme Court of Pennsylvania. Stanyard testified he had been forced to write this letter under duress. It is the general rule that such repudiations are viewed with suspicion and as stated by the Supreme Court of Pennsylvania in this case, this evidence was not likely to produce a different result here, since Stanyard later repudiated his repudiation. Commonwealth v. Collins, supra.

The weight to be given such statements is exclusively a matter for the discretion of the trial judge and does not raise any constitutional issues. See United States v. Stewart, 445 F.2d 897 (8th cir. 1971).

■ Two: *Permitting Jury to Find Petitioner Guilty of Second Degree Murder.* Petitioner contends since he was charged with felony murder (here murder in the course of commission of a robbery under Pennsylvania Law 18 Purdon's Pa.Stat. 4701) it was improper for the court to charge the jury that they could find him guilty of second degree murder. His position is that the jury should have been told that they should either find him guilty of first degree murder or find him not guilty. Petitioner argues that since he was charged with first degree murder, he had to be found guilty of this or nothing. The argument in this respect was thoroughly refuted by the Supreme Court of Penn-

sylvania and it was pointed out that the jury has always been permitted under Pennsylvania Law to exercise its prerogative of mercy. We see nothing in the Federal Constitution which prevents the jury under State law from exercising such prerogative. Certainly, if this were not the law, many people charged with first degree murder in Pennsylvania would long since have gone to the electric chair or to life imprisonment had the jury not extended mercy and found them guilty of second degree murder. We do not see that petitioner had any complaint on this score under the Federal Constitution.

■ Three: *Competency of Stanyard to Testify.* Petitioner contended that Stanyard, who was the main witness against him, was a sociopathic or psychopathic liar and that the court should have declared him incompetent to testify for this reason. The lower court thoroughly reviewed all the testimony with respect to Stanyard's competency in this respect and the Supreme Court held that the matter of competency is in the first instance for the trial judge and after his determination of competency the matter is properly left for the jury to determine whether the witness is telling the truth or not. Again, we see no violation of the Federal Constitution in the Pennsylvania procedure with respect to this matter.

■ Four: *Line-Up Identification.* Stanyard at first failed to identify petitioner when shown him through a window in the county jail. This case was tried before the decisions in Gilbert v. Calif., 384 U.S. 985, 86 S.Ct. 1902, 16 L.Ed.2d 1003 (1967) and United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.

Ed.2d 1149 (1967), decided by the United States Supreme Court on June 12, 1967. These cases required defendant to have counsel present when required to stand in a lineup. In Stovall v. Denno, 388 U. S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), it was ruled that the requirement of presence of counsel at a lineup applies only to confrontations after June 12, 1967. Confrontations here occurred on April 27 and April 29, 1967, and, therefore, the rules of Gilbert and Wade do not apply. Stanyard and petitioner were together for some hours on April 26, 1967, prior to the first robbery committed by Stanyard, that of the Spur Gas Station at 16th and Parade Streets, Erie. Stanyard's identification consequently was not based solely upon lineup confrontations, but also on an independent source, viz: his prior opportunity to observe the petitioner. See Vance v. North Carolina, 432 F.2d 984 (4th cir. 1970); United States v. Levi, 405 F.2d 380 (4th cir. 1968); Ackerman v. Scafati, 328 F. Supp. 386 (D.C.Mass.1971); Denny v. Anderson, 329 F.Supp. 945 (D.C.Del. 1971). The failure of Stanyard to identify Collins when he first viewed him through the window in the Erie County jail certainly cast doubts on his credibility, but that would be for the jury.

■ Five: *Use of Wrongfully Obtained Statement as Harmless Error.* We accept the determination of the Supreme Court of Pennsylvania that the so-called waiver signed by petitioner before questioning about his participation in the crime was ineffective under Miranda v. Ariz., 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and should have been suppressed by the lower court.[1] We disagree, however, with the Supreme

---

1. "Appellant replies that this 'waiver' was ineffective because it is undisputed that at the time he signed it, he had not been informed of the nature of the crime for which he was to be questioned.

"In *Miranda* itself, the Court stated, at page 475, 86 S.Ct. at page 1628, 'The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but *intelligently and understandingly* rejected the offer. Anything less is not waiver.'"

(Emphasis added). High standards of proof are always required where a waiver of constitutional rights is involved. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938). We agree with appellant that an intelligent and understanding waiver of the right to counsel is impossible where the defendant has not been informed of the crime which is being investigated. It is a far different thing to forgo a lawyer where a traffic offense is in-

Court's conclusion that this was harmless error.

The statement was quite damaging to appellant in that he admitted he had picked up Stanyard that evening and drove him to 18th and Parade Streets, Erie, Pennsylvania. This placed petitioner within two short blocks of the Spur Gas Station at 16th and Parade Streets which was Stanyard's first hold-up of the evening before continuing his nefarious travels to Steve's Dinor, at 16th and State Streets, four blocks further on, the scene of the murder.

The Pennsylvania Supreme Court, however, held that the admission of the illegally obtained statement was harmless error because petitioner thereafter at trial took the stand in his own behalf and testified to the same movement with Stanyard.[2] Petitioner's counsel, Robert H. Chase, Esq., testified at the hearing in this case:

N.T. 39 "A. Oh, that is true. There was a statement did get suppressed, another statement he *refused to suppress*. That is correct, and this revolved around the manner in which his constitutional rights were given to him by the police, in relation to the first statement and in relation to the second statement.

Q. And was this first statement— that was the recollection of it that was introduced into evidence as part of the prosecution's case at trial?

A. Yes.

Q. *And it was subsequent to that introduction that Mr. Collins elected to take the stand?*

A. That is correct." (Emphasis added.)

N.T. 40 "THE COURT: He took the stand and testified, did he, at these trials, Mr. Collins?

THE WITNESS: *After the statements went in that he had taken him, Norman Stanyard, to 18th and Parade, he had no alternative. He had to take the stand.* (Emphasis added.)

THE COURT: And he testified that that was true?

THE WITNESS: Yes."

The Pennsylvania Supreme Court in holding admission of the statement to be harmless error went no further than to cite Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. Chapman involved comments by the prosecutor and the trial judge on defendant's failure to testify. The United States Supreme Court recognized the harmless error rule, but held that where federal constitutional rights are involved, the court must be able to declare that the error was harmless beyond a reasonable doubt and this would be subject to ultimate determination by the United States Supreme Court. The error complained of in Chapman was determined not to be harmless and the case was remanded for a new trial.

In Collins, the Pennsylvania Supreme Court did hold that the admission of the illegal statement was harmless, but in so doing, apparently overlooked Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968).

In Harrison on defendant's first trial for murder, illegally obtained statements were used against him. On advice of counsel he then took the stand and testified. The court of appeals remanded for new trial because of the use of the

---

volved than to waive counsel where first degree murder is at stake." Com. v. Collins, 436 Pa. 114, 259 A.2d 160.

2. "However, we also hold that the error was harmless beyond a reasonable doubt. Chapman v. Calif., 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065 (1967). The statement merely related

that appellant picked up Stanyard at Charlie Porter's at 139 West 19th Street, and that they and two others drove Stanyard to 18th and Parade. This statement could not have harmed appellant, for his own testimony at trial was identical. Com. ex rel. Adderley v. Myers, 418 Pa. 366, 211 A.2d 481 (1965)." Com. v. Collins, supra.

illegally obtained statements. At the retrial, defendant's testimony at the first trial was read over objection. The United States Supreme Court reversed, holding that defendant's testimony at the first trial given after the illegally obtained statements had been admitted was the fruit of the poisonous tree and should not have been admitted at the second trial, since the use of these statements had induced defendant to take the stand. The court said:

"Here, however, the petitioner testified only after the Government had illegally introduced into evidence three confessions, all wrongfully obtained and the same principle that prohibits the use of confessions so procured also prohibits the use of any testimony impelled thereby—the fruit of the poisonous tree, to invoke a time-worn metaphor. For the 'essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all.'

\* \* \* \* \* \*

"The remaining question is whether the petitioner's trial testimony was in fact impelled by the prosecution's wrongful use of his illegally obtained confessions. It is, of course, difficult to unravel the many considerations that might have led the petitioner to take the witness stand at his former trial. But, having illegally placed his confessions before the jury, the Government can hardly demand a demonstration by the petitioner that he would not have testified as he did if his inadmissible confessions had not been used. 'The springs of conduct are subtle and varied,' Mr. Justice Cardozo once observed. 'One who meddles with them must not insist upon too nice a measure of proof that the spring which he released was effective to the exclusion of all others.' Having 're-leased the spring' by using the petitioner's unlawfully obtained confessions against him, the Government

must show that its illegal action did not induce his testimony.

"No such showing has been made here. \* \* \* "

We realize that under 18 U.S.C. § 2254(d) factual determinations by the state courts are presumed to be correct. See United States ex rel. Dickerson v. Rundle, 430 F.2d 462 (3d cir. 1970) but here we are not concerned with a factual determination—the facts are admitted. We are rather concerned with a question of federal constitutional law, which had been determined in petitioner's favor by the United States Supreme Court prior to the decision of the Pennsylvania Supreme Court. In Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the Supreme Court said:

"Second. Although the district judge may, where the state court has reliably found the relevant facts, defer to the state court's findings of fact, *he may* not defer to its findings of law. It is the district judge's duty to apply *the applicable federal law to the state court fact findings* independently. The *state conclusions of law may not be given binding weight on habeas.* That was settled in Brown v. Allen, supra (344 U.S. [443] at 506 [73 S.Ct. 397, 97 L.Ed. 469]) (opinion of Mr. Justice Frankfurter).

\* \* \* \* \* \*

" \* \* \* The Illinois Supreme Court opinion rendered at the time of direct appeal contains statements which might indicate that the court thought the confession was admissible if it satisfied the 'coherency' standard. Under that test the confession would be admissible '[s]o long as the accused [was] \* \* \* capable of making a narrative of past events or of stating his own participation in the crime \* \* \*.' [People v. Townsend], 11 Ill.2d [30], at 43, 141 N.E.2d [729], at 736. As we have indicated in Part I of this opinion, this test is not the proper one. Possibly the state trial judge believed that the admissibility of

allegedly drug-induced confessions was to be judged by the 'coherency' standard."

In Maxwell v. Eyman, 429 F.2d 502 (9th cir. 1970), it was said "A state appellate court's opinion containing mere recitals of ultimate factual conclusions does not suffice."

As a Federal District Court, despite our great respect for the Supreme Court of Pennsylvania, we have no option but to follow the decisions of the United States Supreme Court, and grant the writ unless the Commonwealth brings petitioner to trial again within 5 months. At this retrial, there must be no use of the illegally obtained statement nor of testimony by petitioner at the first trial. The foregoing opinion contains the findings of the court pursuant to Rule 52(a).