Steve **PAVKOVICH**

v.

Joseph **BRIERLEY, Supt. and Common-**
**wealth of Pennsylvania.**

**Civ. A. No. 27–72 Erie.**

United States District Court,
W. D. Pennsylvania.

June 21, 1973.

---

Edward W. Goebel, Jr., Erie, Pa., for plaintiff.

Robert H. Chase, Erie, Pa., John H. Duff, Pittsburgh, Pa., for defendant.

OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

KNOX, District Judge.

Petitioner, a state prisoner serving a life term for murder, files this petition for a writ of habeas corpus in this court. He has exhausted his state post-conviction remedies. See Commonwealth v. Pavkovich, 444 Pa. 530, 283 A.2d 295 (1971).

The life term was imposed in February 1963 following a verdict of guilty of murder in the first degree for the killing of one John Cochran, in a tavern in Erie, Pennsylvania. The killing occurred October 24, 1962.

The court has spent a large amount of time on this case. Following arguments as to whether an evidentiary hearing was required, the court ordered defendant brought from the Western Pennsylvania Correctional Institution at Pittsburgh where he is serving his sentence to Erie for an evidentiary hearing, at which witnesses on both sides were heard. Extensive briefs were filed followed by oral arguments from counsel. Decision has been delayed first to allow defendant to be examined by a psychiatrist of his own choosing who then reported at a hearing in court following which the state asked for a psychiatric examination of their own and this was also permitted, followed by another evidentiary hearing.

Petitioner's reasons for granting the writ as stated by his counsel are as follows:

(1) the confession was involuntary under the totality of the circumstances,

(2) the trial judge erred in his instructions to the jury in response to a question as to the burden of proof for voluntary manslaughter.

(3) a member of the court en banc disposing of petitioner's post trial motions which were permitted to be filed and reviewed by the court 6½ years after the original sentence in lieu of post-conviction hearing remedies was the District Attorney who held that office at the time the original conviction was obtained. We will dispose of these contentions in that order.

## I. *Involuntariness of the confession.*

■ The shooting of John Cochran by the petitioner occurred October 24, 1962. The confession which is the bone of contention in this case was obtained at approximately 4:00 a. m. on the morning of October 25, 1962. The trial took place in February, 1963, at which the confession was admitted in accordance with the desires of petitioner's counsel. This trial and the determinations of the admissibility of the confession occurred before the decisions of the U.S. Supreme Court in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (1964) and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966). Regardless of this, the law is clear that the standards enunciated in Miranda and Escobedo are to be considered as significant in pre-1964 cases. In Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the court said:

"Thus, while Escobedo and Miranda provide important new safeguards against the use of unreliable statements at trial, the nonretroactivity of these decisions will not preclude persons whose trials have already been completed from invoking the same safeguards as part of an involuntariness claim"

See also Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). The difficulty as pointed out in a prior memorandum with respect to this matter is that there never has been a hearing or factual determination of the voluntariness of this confession in a post-conviction proceeding by the Pennsylvania Courts. The Supreme Court proceeding has in Commonwealth v. Pavkovich, supra, stated it could find nothing wrong with the confession but there had never been a full hearing on the post-conviction hearing allegations with respect to this matter. See 28 U.S.C. § 2254 as to limits upon the right of review of this court where there has been a complete factual hearing and determination by the state court.

Turning now to the factual circumstances under which the confession which was received in evidence was given, we find that on the day of the shooting, petitioner arose at 8:45 a. m., took two ten milligram librium capsules which a doctor had given him to tranquilize him. He had four or five vodka and orange drinks. He called the decedent, John Cochran, and said that he wanted to talk to him because he wanted to explain that he had not been associating with Cochran's wife and wanted the man to cease his threats. He asked Cochran to meet him in a tavern. Whatever might have been his purpose, he took with him a loaded revolver and an extra box of shells. He imbibed two more orange and vodka drinks and went to the tavern where the shooting occurred. His explanation was that he had become alarmed because of threats reported to him from Cochran and wanted to show him that he was armed. He said he took the revolver out to show Cochran that he was in earnest and accidentally the revolver went off, killing Cochran. The jury determined that this was a typical case of murder while lying in wait in violation of the Pennsylvania Statute, 18 Purdon's P.S. § 4701. The shooting was witnessed by bystanders. He was then taken to the police station. He tried to call his parents to obtain counsel for him but was refused even a single telephone call. He was put into a cell without food or refreshment and at 1:30 a. m., the district attorney began to

question him and at 4:30 a. m., without being given an opportunity to speak to his family or attorney, he gave the confession which is in controversy here. He stated that he did not wish to sign but at the last moment someone in the background stated "you will sign" whereupon he signed.

We are unable to determine that the petitioner was drunk or under the influence of drugs at the time the confession was given. We accept the testimony of E. Buist Wells, M. D., who testified that the effects of the alcohol and drugs would long since have worn off. We do, however, consider as serious the circumstances that the police refused to allow him to call his parents so as to obtain an attorney for him, the fact that he was kept up until the small hours of the morning and the fact that the district attorney, a leading lawyer of Erie, Pennsylvania, once a common pleas judge, was not called to testify as to the circumstances of taking this confession at 4:30 a. m. without giving petitioner an opportunity to consult with counsel.

Admittedly, this confession was extracted from defendant prior to Escobedo and Miranda, supra. However, as noted in Johnson v. New Jersey, supra, the safeguards may be invoked as part of an involuntariness claim. We have given little credence to the testimony of the psychiatrists on either side. Both of them described petitioner as not being a mentally incompetent person entitled to the defense of insanity. They have, however, pictured him as being a compliant person, eager to please, who would readily be induced to sign a confession under the circumstances present. See

Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966) where failure to give adequate Miranda warnings was held to be a significant factor to consider in cases tried prior to Escobedo and Miranda.

■ Under the "totality of the circumstances", we find that he was not under the influence of alcohol or drugs at the time he gave this confession but, considering the circumstances of his being kept up until 4:30 a. m. from 8:30 a. m. the previous day without food or refreshment and being prohibited by the police from calling his family or being able to secure counsel, that under all the circumstances the confession must be considered as involuntary and we so determine.

This, however, is not the end of the matter. Petitioner at his trial was represented by Joseph V. Agresti and William J. Schaaf, Esquires, two leading trial lawyers in Erie, Pennsylvania and known to the court as being extremely competent and diligent in cases of this kind. Petitioner contends that they were helpless and unable to keep out the confession rendered under the circumstances above set forth.

■ This is not the whole story, however, under which this confession came into evidence. These experienced trial counsel wanted this confession in for the purpose of confirming their client's exculpatory story that the shooting was accidental. Both counsel agreed when testifying in this case that they wanted this confession in because of the statements it contained which favored their cause.[1] We thus hold that, regardless of

---

1. See testimony of Attorney Schaaf, page 132:

"All right. Now, the theory of the defense was that, because of the association of the defendant with this gentleman's wife, there was some bad blood between them, and we wanted to explain the meeting between the defendant and this gentleman at the bar and why it was that the defendant carried a gun with him, and, further, we wanted to bolster our position that this was not a willful, deliberate, in-

tentional shooting, but, on the contrary, was an accidental discharge of the gun under circumstances where the defendant brought forth the gun merely to show it to the other gentleman. This statement had a great deal of that material in it, and we felt that, to bolster our case, the best thing we could do would be to have a prior consistent statement, which would have been made to the police long before any attorneys got into the picture or before the defendant had time to reflect

whether the statement was voluntary or involuntary, having been relied upon by the defense for trial strategy purposes, defendant cannot now upset his conviction on the grounds that the statement was involuntary.

As to permitting the entry of an otherwise involuntary confession as a matter of trial strategy in the hope of securing benefits therefrom, see Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965) and discussion of the same in United States ex rel. McCloud v. Rundle, 402 F.2d 853 (3d Cir. 1968). The court said at 379 U.S. 451, 85 S.Ct. 569:

> "The evidence suggests reasons for a strategic move * * *. If either reason motivated the action of petitioner's counsel, and their plans backfired, counsel's deliberate choice of strategy would amount to a waiver binding on petitioner and would preclude him from a decision on the merits of his federal claim either in the state courts or here. * * *"

See also United States ex rel. Cornitcher v. Rundle, 285 F.Supp. 625 (E.D.Pa. 1968); United States ex rel. Henderson v. Brierley, 300 F.Supp. 638 (E.D.Pa. 1969) where the court found there was inaction on the part of counsel as the result of trial strategy.

It should be noted that petitioner in the hearing on this case before this court admitted that the contents of the confession were true. He clearly took the position as he did at the trial and as set forth in the confession that the shooting was accidental. In addition there was an overwhelming amount of other evidence demonstrating his guilt and therefore the harmless error rule of Chapman v. California should apply.

386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

This is not a situation such as arose in Collins v. Brierley, D.C., 336 F.Supp. 1024 (now on appeal) where petitioner at a murder trial resisted the admission of a confession which was later held to be erroneously received and as a result of the erroneous reception, petitioner felt compelled to take the witness stand in which case this court held that Harrison v. United States, 392 U.S. 219, 88 S. Ct. 2008, 20 L.Ed.2d 1047, mandated a new trial.

II. *Instructions as to the burden of proof in voluntary manslaughter.*

No question has been raised as to the original instructions to the jury with respect to the elements of murder. However, after the jury had been deliberating for some time, they returned for additional instructions stating the question:

> "Your Honor, am I correct in assuming that if a jury cannot agree as to the degree of the crime, they are to compromise for the lesser degree?"

To this, the court responded:

> "Again, I do not impose my thinking on that subject. It is entirely up to you. But, I know of nothing in the defendant's testimony or the circumstances or the testimony of anyone else that at that particular time the deceased gave provocation or that there was a sudden heat, passion, or fear or rate, at that time, which would *justify the shooting.* Although it is for you. If you do come to that conclusion that there was, you would find a *verdict of voluntary manslaughter.* But if there wasn't, then you might go to consider the next item, which is

---

and conjure up some kind of a defense. In other words, this lent credence to the position that we were taking at trial."
"Credence of an accidental shooting?"
"Yes, sir."
"It was, then, part of defense strategy to make the statement part of the Commonwealth's case, to substantiate accidental shooting?"
"That is correct."

See also testimony of Attorney Agresti, page 142:
"What was the reason for not objecting to the admissibility of the statement?"
"It was our considered opinion, at the time, that the statement should be allowed into the record, because it bore out the contentions of the defense to just what happened on that unfortunate night."

second degree murder." (Emphasis added.)

It will be noted that the trial judge left this matter up to the jury and as we construe the instruction, all he was doing was pointing out to the jury that there was no evidence of a sudden heat, passion, fear or rage on the part of the defendant which would constitute the elements of voluntary manslaughter. The trial judge had previously stated:

"I am not saying that you are going to eliminate the question of accident, but assuming from your problem you are going to ignore the question of accident and say that there was an unlawful killing of some kind, then I would suggest that you might do it this way—although it is not binding on you—you might consider voluntary manslaughter."

The Supreme Court of Pennsylvania held that these instructions were proper and there was no error in the court telling the jury that the evidence as viewed by him would not support a verdict of voluntary manslaughter citing Commonwealth v. Yeager, 329 Pa. 81, 196 A. 827 (1938). In Pennsylvania as in the federal courts, the judge has a right to comment on the evidence to the jury as long as his remarks are fair and not prejudicial and he leaves the ultimate decision to the jury. It is not the function of the federal courts to instruct state trial judges as to the manner in which they charge juries. This is purely a matter of state law for the state supreme court and we perceive no error of constitutional dimensions violating petitioner's rights to due process or any other constitutional right.

III. *District Attorney sitting as member of the court en banc.*

The district attorney at the time of the trial did not try the case personally. Seven years later petitioner commenced post-conviction proceedings under state law and at that time the trial judge (now deceased) in lieu of conducting a post-conviction hearing act proceeding, reinstated petitioner's motions for new trial and in arrest of judgment. The Supreme Court of Pennsylvania pointed out that the trial court should have instead allowed a nunc pro tunc appeal rather than allowing the filing of new post trial motions since they had already been disposed of shortly after the trial in an opinion filed June 20, 1963. The Supreme Court stated that the new court en banc which included the former district attorney simply denied the new post trial motions on the basis of the opinion of the previously constituted court en banc which did not include the former district attorney. The Supreme Court also pointed out that no objection to the *inclusion of the judge in question* was raised prior to the appeal to the Supreme Court.

We agree that it was improper for the former district attorney in 1969 to sit as a member of the court en banc and do not by any means indicate that if this were decisive we would approve such procedure but in this particular case it makes no difference to the outcome. The matter has been thoroughly reviewed by the Pennsylvania Supreme Court and this court has conducted several evidentiary hearings on all matters concerning this case. Admitting that the inclusion of the former district attorney on the court en banc was improper, nevertheless, it is obvious that it did not affect the disposition of this case after thorough review by the Pennsylvania Supreme Court and it is not affecting the review of the matter by this court. It will be noted that the three members of the court en banc were unanimous and hence this matter could not have affected the decision of that court. If there were any error, it would have been rectified by the review of the whole case by this court and we therefore consider this matter to be harmless error.

For these reasons, the petition for the writ will be denied. The foregoing opinion includes findings of fact and conclusions pursuant to Rule 52(a).