**UNITED STATES of America**

v.

**Lawrence R. MINOR et al.**

**Crim. A. No. 74–338.**

United States District Court,
W. D. Pennsylvania.

Jan. 13, 1975.

---

Daniel H. Shapira, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

Morris F. Cohen, Pittsburgh, Pa., for Minor.

Donald D. Rossetti, Pittsburgh, Pa., for Dorsey.

Joseph J. Pass, Jr., Pittsburgh, Pa., for Jackson.

## MEMORANDUM AND ORDER

MARSH, Chief Judge.

Lawrence R. Minor, Russell Howard Dorsey, Jr., and Dewey Lee Jackson, Jr. were indicted for the armed robbery of the First Federal Savings and Loan Association of Pittsburgh, 831 Warrington Avenue, on the 3rd day of September, 1974. Dorsey and Jackson each moved to suppress admissions made to the police. After a hearing held on January 6th and 7th, 1975, in which the witnesses were segregated, Dorsey's motion was denied and Jackson's was granted. On January 10th, the government filed a motion for reconsideration of the decision granting the Jackson motion or in the alternative for a continuance of the hearing. The motion for reconsideration or continuance will be denied.

On October 7, 1974, the defendant Jackson and one Jennings were arrested in a U-Haul van truck by the police [1] on Interstate Highway No. 64 between 7:00 and 8:00 p. m. They were "arrested on the charge of unarmed robbery" (Defendant Jackson Exhibit B (DXB)) of an Exxon Service Station. The police advised Jackson of his rights as directed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), including his right to counsel. Jackson stated that he wanted to see a lawyer.[2] His request was not contradicted. No lawyer was supplied. In *Miranda, supra,* at 474, 86 S.Ct. at 1628, it was said:

"If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have

---

1. The arresting officers were Lt. R. L. Williamson and Patrolmen W. H. Musgrave, Jr. and W. L. Evans. (Defendant Jackson Exhibit B (DXB)). None of the arresting officers attended the suppression hearing.

2. The government neither objected to this testimony nor pled surprise. After the hearing was concluded and an adverse decision indicated, it then pled surprise.

an opportunity to confer with the attorney and to have him present *during any subsequent questioning*. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." (Emphasis supplied).

The interrogation of Jackson did not cease.

The arresting officers took the suspects to the police station in South Charleston, West Virginia. There again the police read to him his rights. While he was being fingerprinted he was advised of his rights a third time. He did not again request a lawyer. While being fingerprinted he admitted to the robbery of the Exxon Service Station.

The next morning, October 8, 1974, at about 9:30 a. m., without having breakfast, Jackson was reinterrogated by the police. His Miranda rights were repeated twice. (GX5 and GX6). Jackson read the advice of rights forms and understood them. However, he refused to sign a waiver form which was part of GX6. The interrogation continued for about an hour, during which Jackson admitted stealing the van in Pittsburg and robbing a branch of the First Federal Savings and Loan located on Warrington Avenue in Pittsburgh, where the robbers obtained $2,500. (DXB). The defendant did not renew his request for a lawyer.

The police notified the FBI in Charleston and two special agents arrived later on the same day, October 8th. The agents furnished Jackson "with an 'interrogation; advice of rights' form which he read" (Defendant Jackson Exhibit A (DXA) and understood. The agents told Jackson that the interview was concerned with his alleged robbery of a savings and loan association in Pittsburgh. Jackson refused to discuss this robbery with the FBI agents. This abrupt change of attitude casts considerable doubt upon the government's proof that Jackson voluntarily waived his rights to counsel and to re-

main silent. His refusal to talk to the agents reinforces our finding that the defendant wanted a lawyer, and that his oral admissions made to police about the Pittsburgh robbery were not voluntarily, intelligently and understandingly made but were the product of compulsion, subtle or otherwise.

Since Jackson requested a lawyer and at all times refused to sign a waiver form, a heavy burden rested upon the government to demonstrate that at the anomalous reinterrogation without counsel, this defendant voluntarily, knowingly and intelligently waived his privilege against self incrimination and his right to counsel. In our opinion the government did not meet its burden. *Miranda, supra,* at 475, 86 S.Ct. 1602.

The defendant's counsel argued that Jackson did not intelligently and understandingly waive interrogation about the Pittsburgh robbery because the police had not informed him of their concern in that investigation as did the FBI agents. Counsel cited *Commonwealth v. Collins,* 436 Pa. 114, 259 A. 2d 160 (1969) in support of this argument but neglected to cite *Collins v. Brierly,* 492 F.2d 735 (3rd Cir. 1974), in which the Court of Appeals reversed *Commonwealth v. Collins.* Accordingly, we do not treat this argument of the defendant as a valid reason to suppress.

After the testimony was closed and an adverse decision was indicated the government claimed it was surprised by Jackson's testimony that he wanted a lawyer. The motion to suppress does not mention this fact. However, the government had the burden of proof; it knew well in advance of the hearing the identity of the arresting police (DXB) who made the charge of service station robbery against the defendant. It can reasonably be inferred from the circumstances that the interrogating South Charleston police knew or should have known the facts pertaining to the arrest, the charge and the defendant's request for a lawyer. Notwithstanding, the government failed to subpoena the

arresting officers for the suppression hearing. Thus, Jackson's testimony that he told them he wanted a lawyer stood uncontradicted at the conclusion of the hearing.

After the testimony was closed, argument was heard from each side, and the court indicated that Jackson's motion to suppress admissions would be granted. Belatedly the government requested permission to bring from West Virginia the arresting officers to testify. The court decided it would be unfair after a decision had been made, to reopen the hearing so that the government could produce police from West Virginia hopefully to contradict Jackson's testimony that he had requested a lawyer. The government's request was refused.

In our judgment the motion of Jackson to suppress admissions was properly granted on the evidence adduced at the hearing, and the government's motion for reconsideration or to reopen is reluctantly denied.