## Commonwealth *v.* Morgan, Appellant.

Argued June 12, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Benjamin Novak,* Assistant Public Defender, with him *Robert L. Martin,* Public Defender, for appellant.

*Robert A. Mix,* Assistant District Attorney, and *Charles C. Brown, Jr.,* District Attorney, submitted a brief for Commonwealth, appellee.

OPINION BY PRICE, J., December 1, 1975:

Larry Arthur Morgan, Sr., the appellant herein, was convicted of four counts of forgery[1] following a non-jury trial. The only issue raised in this appeal is whether the lower court correctly refused appellant's demurrer at the close of the prosecution's case. Appellant contends that the Commonwealth's evidence was insufficient to establish his guilt beyond a reasonable doubt.

The question to be resolved by the trial court on a demurrer to the evidence is whether, accepting as true all the facts of record and all reasonable inferences to be drawn therefrom, they would support a verdict of guilty. *Commonwealth v. Collins,* 436 Pa. 114, 259 A.2d 160 (1969) ; *Commonwealth v. Green,* 210 Pa. Superior Ct. 482, 233 A.2d 921 (1967).

---

1. Act of June 24, 1939, P.L. 872, §1014 (18 P.S. §5014), *repealed* Act of Dec. 6, 1972, P.L. 1482, No. 334, §5. This crime occurred prior to the effective date of the new Crimes Code.

Applying this principle to the instant case, the lower court found the following facts: On October 13, October 14, and November 22, 1972, four counterfeit checks were cashed in Centre County stores. Each check was drawn on the First National Bank of Hartford, Connecticut, by the Hartford and Travelers Insurance Companies, and made payable to William J. Erdley. The payee's name was typewritten onto the check; the amount payable was imprinted by a check writing machine. The checks were dishonored by the bank and were returned to the businesses as bogus items.

On January 8, 1973, service of an unrelated arrest warrant was made upon Gloria Morgan, appellant's wife, at their residence in Blair County, Pennsylvania. The state policeman who made the arrest observed a printing press and assorted items used in the printing process in appellant's home. A search warrant was obtained on the basis of his observation, and as a result of its execution, the following items were seized and introduced at trial: a typewriter, a check writing machine, two portable printing presses which had been dismantled, a box containing print, a box containing printing furniture,[2] and several newspapers.

Following the seizure, the items were submitted to the Pennsylvania State Police Crime Laboratory in Harrisburg, where they were given to Corporal Gencavage, an expert in examining questioned documents. Corporal Gencavage testified that, based upon his examination, the typewriter seized from appellant's home was the same one which had been used to enter the payee's name on the forged checks. He also stated that the check writing machine was identical in style to that used on the checks, but could not be positively identified. He further testified that the type characters found were like those on the

---

2. Printing furniture consists of miniature blocks of wood which are used to set the type into proper widths.

checks, but because the printing presses were dismantled, a comparison examination could not be made.

The policeman who conducted the search, Trooper Bradley, testified that the newspaper on top of the pile found beside the typewriter in appellant's home was folded so as to expose an article warning local merchants that counterfeit checks were being passed in the area. The article was published by the Altoona Police Department, and identified checks drawn on the same bank and by the same payor as the checks involved in this case.

Trooper Bradley also testified that he questioned appellant about his possession of the printing equipment. Appellant told the officer that all of the machinery belonged to him and that he had used it prior to September of 1972, when he operated his own business as a printer and photographer.[3]

The Commonwealth also proved that within a week after the search of his residence, appellant left the area. He moved to Cleveland, Ohio, where he lived under the assumed name of Larry Martin.[4] He was later apprehended in Altoona, Pennsylvania, when a car bearing Ohio license plates was spotted outside the residence of appellant's girlfriend.

What constitutes the crime of forgery is detailed in the Act of June 24, 1939, P.L. 872, §1014 (18 P.S. §5014): "Whoever fraudulently makes, signs, alters, utters or publishes, or is concerned in fraudulently making, signing, altering, uttering or publishing any written instrument, to the prejudice of another's right, with intent to defraud any person or body corporate, or fraudulently causes or procures the same to be done, is guilty of a felony, and upon conviction thereof, shall be sen-

---

3. Appellant also told Trooper Bradley that at the time of the search he operated a collection agency. However, the officer was unable to verify this information.

4. Appellant admitted having left the jurisdiction to avoid prosecution.

tenced to pay a fine not exceeding five thousand dollars ($5,000), or to undergo an imprisonment, by separate or solitary confinement at labor, not exceeding ten (10) years, or both."

While it is evident from the record that the Commonwealth did not place appellant in Centre County at the time the checks were cashed, it is also evident that the totality of the circumstances support the finding that appellant made or altered the checks involved herein. Appellant was proven to be in possession of the type-writer which had been used to print the payee's name on the forged checks shortly after they were cashed. He also had possession of a check writer like that which had been used to place the amount payable on the forged checks. Moreover, two printing presses, print and furniture were found dismantled in appellant's home, along with a newspaper article warning local merchants to watch for bad checks like those involved in this case.

Coupled with those facts was appellant's statement to Trooper Bradley that he had once operated his own printing business. A reasonable inference to be drawn from this statement is that appellant was familiar with the printing process in general and the use of his own equipment in particular.

Furthermore, once appellant's home was searched and these items uncovered, appellant left the jurisdiction and assumed the use of a new name. Flight and use of an alias have been recognized in this Commonwealth as evidence of a consciousness of guilt. *Commonwealth v. Collins,* 440 Pa. 368, 269 A.2d 882 (1970).

We find that the Commonwealth's evidence and the inferences reasonably drawn therefrom are sufficient to support a finding of guilt. Therefore, the lower court properly overruled appellant's demurrer.

Judgment of sentence affirmed.

HOFFMAN and SPAETH, JJ., concur in the result.

JACOBS, J., dissents.