331 A.2d 193
**COMMONWEALTH of Pennsylvania**
**v.**
**Carolyn SAUNDERS, Appellant.**

Supreme Court of Pennsylvania.
Argued April 24, 1974.
Decided Jan. 27, 1975.

678

Joseph Michael Smith, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Carolyn Saunders was convicted of murder in the second degree following a trial without a jury. Post-trial motions were denied and she was sentenced to two and one-half to ten years imprisonment at the State Correctional Institution at Muncy. This direct appeal followed. Miss Saunders has challenged the admissibility of an inculpatory statement which she gave the police and which was introduced into evidence, over objection, at trial; she also asserts that the sentence imposed was illegal. We affirm.

Briefly stated, the evidence adduced at trial established that on the morning of Sunday, June 24, 1973, shortly before 9:00 A.M., one Gladys Mae Pearson, also known as "Gypsy", went to the apartment of one Earl Archie in order to buy narcotics. Present with Archie in the apartment were the appellant and one Veronica Tucker. Because Gypsy did not have enough money to pay for the narcotics, Archie refused to sell to her. An argument ensued and Gypsy departed.

On the street outside the apartment Gypsy encountered a friend, Fred Jones, and the two stood talking on the sidewalk directly beneath the windows of Archie's apartment, which was on the second floor at the front of the building. Jones then began arguing with Archie and the two women who were standing at the windows of the apartment. As the argument continued, Jones drew a pistol and fired.[1] After exchanging a few more angry words with the trio in the window, Gypsy and Jones then crossed the street and entered Jones's automobile. Just as Jones started his car, he was struck by a shotgun blast fired from the apartment window. Jones subsequently died from the wound.

Shortly after the shooting, appellant and Miss Tucker were seen fleeing the apartment building. That evening, at approximately 10:20 P.M., Carolyn Saunders was arrested and charged with Jones' murder. Upon being interrogated at the police administration building, she initially denied being the shooter. She later was given a polygraph test and after being told that she had failed it she gave the statement which was introduced at trial. This occurred between 6:15 and 6:45 o'clock on the morning following her arrest. In the statement appellant admitted firing the fatal shot but claimed that she was merely trying to hit the side of the car when she fired, and that the striking of Jones was accidental.

---

1. The evidence was conflicting as to whether he fired one or two shots and whether he fired at the windows or up in the air. In any case, no one was hit.

Appellant contends that this statement was improperly admitted into evidence because it was obtained during an "unnecessary delay" between the time of her arrest and her arraignment in violation of Pa.R.Cr.P. 118 (now Rule 130, 19 P.S. Appendix, and was the product of the delay. *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972). Whether or not this is a tenable proposition in light of all the circumstances disclosed by the record, appellant is precluded from asserting it as error.

█ Carolyn Saunders herself took the stand at trial and gave almost verbatim the same version of the episode as that contained in the statement which was introduced into evidence. We have held a number of times that such corroborative testimony by a defendant disentitles him from claiming that an error in admitting a statement constitutes ground for reversal. *Commonwealth v. Greene,* 456 Pa. 195, 198, 317 A.2d 268 (1974); *Commonwealth v. Collins,* 436 Pa. 114, 121–122, 259 A.2d 160, 164 (1969); *Commonwealth ex rel. Edowski v. Maroney,* 423 Pa. 229, 223 A.2d 749, 752 (1966); *Commonwealth ex rel. Adderley v. Myers,* 418 Pa. 366, 211 A.2d 481 (1965). *See also, Commonwealth v. Witherspoon,* 442 Pa. 597, 277 A.2d 827 (1971); *Commonwealth v. Diaz,* 438 Pa. 356, 264 A.2d 592 (1970); *Commonwealth v. Padgett,* 428 Pa. 229, 237 A.2d 209 (1968). Furthermore, appellant freely admitted in her testimony that the statement was accurate and that she did not disagree with anything contained in it.

█ Appellant contends that she should not be foreclosed because had the statement been excluded, she would not have adopted the trial strategy that she did, namely, to admit the shooting as a scare device but to deny any intention to hit the decedent. In *Commonwealth v. Greene,* 456 Pa. 195, 317 A.2d 268 (1974), we rejected a similar argument in a comparable situation: "At the conclusion of the Commonwealth's evidence, appellant took the stand and repeated the substance of her

inculpatory admissions in an effort to establish that the stabbing was in self-defense. It cannot be argued seriously that her out-of-court confession determined her choice of defenses since the Commonwealth produced two eye-witnesses to the altercation between Greene and Brock." 456 Pa. at 198–199, 317 A.2d at 270 (alternative ground of decision). We further observed, in a footnote, that "[u]nder the circumstances, pleading self-defense was the most promising course available to appellant." *Id.* at 199, 317 A.2d at 270, n. 2. Similar considerations obtained in the present case.[2] In the face of the Commonwealth's overwhelming evidence, appellant's "most promising course" was that which she pursued: an attempt to negate the intent element by her own testimony. As it was, the trial court was sufficiently impressed with her testimony concerning the absence of intent that it determined that the case rose only to murder in the second degree.

The other assignment of error relates to appellant's sentence. She points out, correctly, that the sentence of not less than two and one-half years and not more than ten years in the State Correctional Institution at Muncy was not in accordance with the terms of the new Muncy Act,[3] which proscribes the imposition of minimum sentences for women. The trial judge in her opinion below took note of this fact, but explained that she imposed a minimum sentence because of her conclusion that the no-minimum provision of the act was unconstitutional as violative of the Equal Protection Clause of the Fourteenth Amendment of the United States Consti-

2. Appellant's testimony was amply confirmed by that of Gladys Mae Pearson (Gypsy) identifying Miss Saunders as the shooter and by testimony of two other persons, Helen Felder and Tina Kinard, as to non-custodial oral admissions made to them by the appellant. Additionally, a statement of Veronica Tucker, introduced into evidence by the *appellant,* confirmed both the details of Miss Saunders' statement and her trial testimony.

3. Act of July 16, 1968, P.L. 349, No. 171, § 1, 61 P.S. § 566.

tution and the Equality of Rights Amendment to the Pennsylvania Constitution, Pa.Const., Art. I, Sec. 27, P.S. In so holding, the trial judge but anticipated the recent decision of this Court which struck down that portion of the New Muncy Act as unconstitutional. *Commonwealth v. Butler*, Pa., 328 A.2d 851 [filed October 16, 1974]. It follows, accordingly, that the imposition of a minimum sentence on appellant was correct.

Judgment of sentence affirmed.

MANDERINO, J., did not participate in the consideration or decision of this case.

NIX, J., filed a dissenting opinion, in which ROBERTS, J., joined.

NIX, Justice (dissenting).

The majority's opinion, in my judgment, creates an intolerable tension between two constitutionally-guaranteed rights under the Pennsylvania Constitution and I therefore dissent. Article 5, § 9 of the Pennsylvania Constitution provides an absolute right of appeal.[1] Article 1, § 9 affords anyone accused of a crime an opportunity to be heard.[2] Both of these rights are guaranteed; neither is conditional or qualified.

1. "§ 9. Right of appeal
There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law."

2. "Sec. 9. Rights of accused in criminal prosecutions
In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land."

While it is true that decisions of a trial attorney are binding on a client if they are strategic in nature, *Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); *Commonwealth ex rel. Adderley v. Myers*, 418 Pa. 366, 211 A.2d 481 (1965), an accused should not be unnecessarily required to surrender one right, simply because he elects to exercise another.

The problem of the possibility of conflict between protections afforded under various constitutional provisions is not new. In an analogous situation, the United States Supreme Court refused to force defendants in possessory crimes to be faced with an election between the protections of the Fourth and Fifth Amendments. *Simmons v. United States*, 390 U.S. 377, 390, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968). In *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1959), the Supreme Court noted:

". . . such a defendant has been placed in the criminally tendentious position of explaining his possession of the premises. He has been faced, not only with the chance that the allegations made on the motion to suppress may be used against him at the trial, . . . but also with the encouragement that he perjure himself if he seeks to establish 'standing' while maintaining a defense to the charge of possession [of narcotics]". 362 U.S. at 262, 80 S.Ct. at 731.

In *Simmons v. United States, supra* 390 U.S. at 393–394, 88 S.Ct. at 976, the Supreme Court observed:

"Those courts which have allowed the admission of testimony given to establish standing have reasoned that there is no violation of the Fifth Amendment's Self-Incrimination Clause because the testimony was voluntary. As an abstract matter, this may well be true. A defendant is 'compelled' to testify in support of a motion to suppress only in the sense that if he refrains from testifying he will have to forgo a benefit, and

testimony is not always involuntary as a matter of law simply because it is given to obtain a benefit. However, the assumption which underlies this reasoning is that the defendant has a choice: he may refuse to testify and give up the benefit. When this assumption is applied to a situation in which the 'benefit' to be gained is that afforded by another provision of the Bill of Rights, an undeniable tension is created." (Footnotes omitted).

The United States Supreme Court recognized that "Although a defendant may have a right, even of constitutional dimensions, to follow whatever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *McGautha v. California,* 402 U. S. 183, 212–213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971). The Court in *McGautha* indicated that the crucial question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.

In my judgment there is no basis in law or policy that justifies the election of rights the majority is now requiring. The ruling for which the appellant seeks appellate review is the refusal to suppress a confession because of an alleged violation of our procedural rule 118 (now Pa.R.Crim.P. 130).[3] In our decision in *Common-*

3. Pa.R.Crim.P. 118 provided:
"Rule 118. Proceedings Initiated by Arrest Without Warrant
When a defendant has been arrested without a warrant, he shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him.
(a) If the complaint charges a court case, the defendant shall be given an immediate preliminary arraignment.
(b) If the complaint charges a summary offense, the defendant shall be given an immediate trial or upon his request, the defendant shall be given the opportunity of posting security for his appearance at trial on a date which shall be not less than three nor more than ten days after his appearance, unless extended for cause shown, or unless the issuing authority fixes an earlier date upon request of the defendant or his attorney with the consent of the police officer." Adopted January 31, 1970. Effective May 1,

*wealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1973) and its progeny,[4] we announced that any evidence, including incriminatory statements, obtained during an unreasonable delay in violation of Rule 118 would be excluded as evidence. This rule of exclusion was not developed primarily because of the unreliability of such evidence but rather because of our determination to require police conduct to comply with our procedural rules. In the case of statements, this rule of exclusion is invoked regardless of the truth of the admissions sought to be introduced.

I fail to comprehend why the majority has now determined that testimony at trial by appellant which reiterates the challenged statement, and at best merely attests to its accuracy, should provide an adequate basis for effectively denying appellate review of the question of the propriety of the police conduct that initially elicited this piece of evidence. The use of the doctrines of "trial strategy" and "harmless error" in this context creates a misapprehension that an election of options in fact exists. In practice, however, we are well aware that in many instances the need for the accused to offer his testimony was occasioned by the challenged admission by the Commonwealth of the statement.[5]

1970. Effective January 1, 1974, Pa.R.Crim.P. 118 was renumbered in pertinent part as Pa.R.Crim.P. 130.

4. *Commonwealth v. Hancock*, 455 Pa. 583, 317 A.2d 588 (1974); *Commonwealth v. Dixon*, 454 Pa. 444, 311 A.2d 613 (1973); *Commonwealth v. Wayman*, 454 Pa. 79, 309 A.2d 784 (1973); *Commonwealth v. Dutton*, 453 Pa. 547, 307 A.2d 238 (1973); *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973).

5. In support of this position the majority cites a number of our earlier decisions. Upon analysis, the cases relied upon do not provide support for the position sought to be advanced. In both *Commonwealth v. Greene*, 456 Pa. 195, 317 A.2d 268 (1974) and *Commonwealth v. Collins*, 436 Pa. 114, 259 A.2d 160 (1969), only three members of this Court joined in the opinion; thus the statements appearing therein are not representative of the thinking of the majority of the members of this Court and these decisions therefore provide no precedential value. Further, the cases of *Commonwealth ex rel. Edowski v. Maroney*, 423 Pa. 229, 223

687

Unless we modify our "Futch exclusionary rule" in all instances and limit its application to instances where there is serious question as to the reliability of the evidence obtained; I can perceive no justification for curtailing the right of an accused to testify in his or her behalf, on pain of relinquishing a subsequent right of review, of an otherwise properly preserved objection, solely because the testimony may establish the truth of the questioned evidence.

ROBERTS, J., joins in this dissent.

A.2d 749 (1966) and *Commonwealth ex rel. Adderley v. Myers,* 418 Pa. 366, 211 A.2d 481 (1965) are inapposite because in those instances no objection was raised at trial to the introduction of the challenged confession.