J-S46013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| STEVEN LEE TOMINO, | |
| Appellant | No. 2955 EDA 2015 |

Appeal from the Judgment of Sentence Entered March 23, 2015
In the Court of Common Pleas of Northampton County
Criminal Division at No(s):
CP-48-CR-0002115-2014
CP-48-CR-0002931-2014

BEFORE:  BENDER, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED AUGUST 02, 2016**

Appellant, Steven Lee Tomino, appeals from the judgment of sentence of an aggregate term of 27 to 54 years' incarceration, imposed after he was convicted of various offenses including robbery, false imprisonment, aggravated assault of a police officer, and criminal conspiracy.  Appellant challenges the sufficiency of the evidence to sustain his convictions, the trial court's denial of his pretrial motion to suppress a statement he gave to police following his arrest, and discretionary aspects of his sentence.  After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Briefly, Appellant's convictions stem from his participation, along with one cohort, in the armed robbery of Geraldine and James Petry in their home in Northampton County, Pennsylvania. During the robbery, Appellant's cohort held a gun to Mr. Petry's head while Appellant bound both victims, locked them in the pantry of their home, and threatened to kill them if they called police. When, after the robbery, an officer attempted to apprehend Appellant, he fought with the officer, causing cuts to the officer's hands and knees.

Appellant was charged with various offenses in two separate cases that were consolidated for trial. At the close of the trial, the jury convicted Appellant of two counts of robbery (threat of serious bodily injury); two counts of conspiracy to commit robbery; one count of theft by unlawful taking; one count of receiving stolen property; two counts of unlawful restraint; two counts of false imprisonment; and single counts of resisting arrest, aggravated assault, and fleeing or attempting to elude a police officer. On March 23, 2015, he was sentenced to the aggregate term stated *supra*.

Appellant filed timely post-sentence motions, which the court denied on August 24, 2015. He then filed a timely notice of appeal, and also timely complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The court filed a responsive Rule 1925(a) opinion, stating that it was relying on the analysis set forth in its August 24,

2015 order denying Appellant's post-sentence motions. Herein, Appellant raises three claims for our review:

> 1. Was the evidence presented at the time of trial sufficient as a matter of law to sustain a conviction for the offense[s] of robbery, criminal [conspiracy] to commit robbery, and aggravated assault[?]

> 2. Did the trial court err in denying [Appellant's] pre-trial motion to suppress his statement to the police in violation of [Appellant's] constitutional rights under **Miranda**?[1]

> 3. Was the trial court's sentence excessive given [Appellant's] rehabilitative needs?

Appellant's Brief at 6.

We have reviewed the briefs of the parties, the certified record, and the applicable law. We have also examined the August 24, 2015 opinion (titled, "Statement of Reasons") of the Honorable Craig A. Dally of the Court of Common Pleas of Northampton County, which was drafted to accompany Judge Dally's order denying Appellant's post-sentence motions, and to which Judge Dally refers in his Rule 1925(a) opinion. **See** Trial Court Order, 8/24/15. In his opinion, Judge Dally accurately and thoughtfully disposes of Appellant's challenge to the sufficiency of the evidence to sustain his convictions, **see id.** at 5-12; his challenge to the court's denial of his pre-trial motion to suppress, **see id.** at 3-5; and his challenge to the discretionary aspects of his sentence, **see id.** at 12-14. Appellant's rather

_____

[1] **Miranda v. Arizona**, 86 S.Ct. 1602 (1966).

cursory argument in his appellate brief requires no further elaboration by this Court. *See* Appellant's Brief at 10-14. Instead, we adopt the rationale set forth by Judge Dally in his August 24, 2015 order and affirm Appellant's judgment of sentence on that basis.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/2/2016

# IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA

## CRIMINAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : |
| | : |
| v. | :     C-0048-CR-2115-2014 |
| | :     C-0048-CR-2931-2014 |
| STEVEN LEE TOMINO | : |
| a/k/a STEVEN BRIGHT, | : |
|            Defendant. | : |

## ORDER OF COURT

AND NOW, this ___ day of August 2015, Defendant Steven Lee Tomino's Post Sentence Motions are hereby **DENIED IN THEIR ENTIRETY**, as set forth more fully in the attached Statement of Reasons.

## STATEMENT OF REASONS

On January 7, 2015, following a trial presided over by the undersigned, a twelve-member jury found the Defendant, Steven Lee Tomino, guilty of two counts of Robbery – Threat of Immediate Serious Injury; two counts of Criminal Conspiracy to Commit Robbery – Threat of Immediate Serious Injury; one count of Theft by Unlawful Taking – Moveable Property; once count of Receiving Stolen Property; two counts of Unlawful Restraint – Involuntary Servitude; and two counts of False Imprisonment at 2931-2014, and single counts of Resisting Arrest, Aggravated Assault, and Fleeing or Attempting to Elude a Police Officer at 2115-2014.

Following the conviction, the Court ordered that the Defendant be subject to a presentence investigative report, a psychiatric evaluation, a psychological evaluation, and a drug and alcohol evaluation, which the Court received, reviewed and took into consideration in fashioning an appropriate sentence. The Defendant appeared for sentencing on March 23, 2015. The crimes of Receiving Stolen Property, Theft by Unlawful Taking and False Imprisonment

were found to merge for purposes of sentencing at docket # 2931-2014, and the Defendant was sentenced on the remaining charges. At docket # 2115-2014, Defendant was sentenced on the charges of Resisting Arrest, Aggravated Assault, and Fleeing or Attempting to Elude a Police Officer. Collectively, the sentences on both cases amounted to an aggregate term of twenty-seven (27) years to fifty-four (54) years in a State Correctional Institution.

Defense counsel[1] filed post-sentence motions on April 2, 2015, and the Court scheduled a conference on the same for May 15, 2015. As a result of the conference, the trial transcript was ordered to be produced, and a briefing schedule was set. The transcript was filed on June 23, 2015, Defendant's brief was filed on July 27, 2015 and the Commonwealth's brief was received on August 22, 2015. The matter is now ready for disposition.

## Discussion

Defendant raises three issues in his post-trial motion. The first is a motion for judgment of acquittal with respect to the Robbery charge at 2931-2014, and the Aggravated Assault charge at 2115-2014.[2] The second is a motion for a new trial on the basis that the jury's verdict was against the weight of the evidence. Finally, the Defendant seeks reconsideration and modification

---

[1] At the time of trial, Defendant was represented by Michael McGinley, Esquire of the Northampton County Public Defender's Office. By the time of sentencing, Attorney McGinley no longer worked for the Public Defender's Office, and Susan Hutnik, Esquire had assumed Defendant's representation.

[2] Defendant's brief is addressed to only the Robbery and Aggravated Assault charges, and the Court's opinion is written accordingly. However, to the extent that the motion was intended to address all charges against the Defendant (see Defendant's Post Sentence Motion Pursuant to Pa. Rule of Criminal Procedure 720, ¶6), it remains DENIED. Specifically, Defendant's testimony as to how the robbery came about, and Mrs. Petry's testimony as to Defendant working in concert with Mr. Clark is sufficient to sustain Defendant's conspiracy convictions; the testimony set forth herein about the items taken by and recovered from the Defendant is sufficient to sustain his convictions for Theft and Receiving Stolen Property charges, and Mrs. Petry's testimony regarding Defendant binding her and her husband with tape, restricting them to their pantry, and threatening to come back and kill them if they called the police is sufficient to sustain Defendant's convictions for Unlawful Restraint and False Imprisonment. Further, Trooper Hayes' testimony, and Defendant's own testimony that he ran from and struggled with the Trooper in an attempt to elude apprehension is sufficient to sustain the charges of Resisting Arrest and Fleeing or Attempting to Elude a Police Officer.

2

of his sentence, which he alleges was excessive and failed to take into account his rehabilitative needs.

As an apparent adjunct, or threshold to his motions for judgment of acquittal for a new trial, the Defendant challenges that validity of his Miranda[3] waiver, and he contends that his statement to police should have been suppressed.[4]

In order to be valid, a defendant's waiver of his rights under Miranda must be knowing, intelligent and voluntary.

> [I]n the suppression realm, the focus is upon police conduct and whether a knowing, intelligent, and voluntary waiver was effected based on a totality of the circumstances, which may include consideration of a defendant's mental age and condition, low IQ, limited education, and general condition. When a defendant alleges that his waiver or confession was involuntary, the question is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess.

Commw. v. Sepulveda, 55 A.3d 1108, 1136-37 (Pa. 2012) (internal citation omitted).

In the instant case, Defendant was taken to the hospital following his arrest. Officer Miller of the Washington Township Police Department testified that thereafter, he received a call from the State Police that the Defendant wanted to speak with him. N.T. Vol. I, 131:15-25. The Officer testified that when he went to see the Defendant in the emergency ward at Easton

---

[3] Prior to subjecting a defendant to custodial interrogation, a law enforcement officer must administer certain warnings to a defendant, as dictated by Miranda v. Arizona, 384 U.S. 436 (1966). Specifically, the officer must apprise the detainee of their right to remain silent; that any statement the detainee makes may be used as evidence against them; that the detainee has a right to legal consultation and to have an attorney present during interrogation; and that if the detainee is indigent, an attorney will be appointed to represent him or her. Id. A detainee may waive these rights and make an uncounseled statement to police as the Defendant did in the instant case. However, such statement may only be used against a detainee if it is the product of a knowing, intelligent and voluntary waiver of the aforementioned rights. See generally Commw. v. O'Bryant, 388 A.2d 1059 (Pa. 1978).

[4] Defendant filed pretrial motions on December 12, 2014, inclusive of a motion to suppress his statement to police. In support of that motion, the Defendant had alleged, as he does herein, that he was suffering from a head injury at the time of his statement, and that he was on medication that adversely affected his cognition. On January 6, 2015, the Court issued an Order and Statement of Reasons, which in pertinent part, denied the motion to suppress, based on the Court's finding that the record was "completely devoid of any evidence to show that [Defendant] was in fact on medication, that any medication he may have been on had any effect on his cognition, or that he suffered from any head injury which affected his cognition."

3

Hospital, the Defendant was cooperative and "wanted to talk." N.T. Vol. I, 132:8-10. The Officer further testified that the Defendant executed a written waiver of his Miranda rights, which was introduced as an exhibit at trial. N.T. Vol. I, 132:14-133:6.

Beginning at approximately 10:00pm, the Defendant gave an oral statement to the officer, setting forth his involvement in the robbery. N.T. Vol. I, 136:23-137:3. The Officer testified that he then asked the Defendant to provide a written statement, and the Defendant "was more than willing to do so." N.T. Vol. I, 133:7-23.

The Officer described the Defendant as "fluent" and "speaking well" during the interview, and further noted that the Defendant provided his own written statement "very clear" handwriting. N.T. Vol. I, 138:25-139:15. Finally, the Officer testified that the Defendant did doze off at times during the interview. N.T. Vol. I, 138:18-19. The Officer would say the Defendant's name when this occurred, and he "would immediately be re-alerted and continue writing the statement." N.T. Vol. I, 138:20-21.

By his own trial testimony, the Defendant stated that although he had taken heroin earlier that day, he sustained certain physical injuries during his apprehension, and he believed he was suffering from a concussion at the time of his statement to police, he was not on any medication at the time of his statement, and he was able to give the Officer a full and truthful written statement. N.T. Vol. II, 218:25-219:10; 221:1-5; 237:6-9; 253:18-23. Nevertheless, based on Officer Miller's testimony that the Defendant periodically dozed off during the interview, which Defendant suggests was indicative of a head injury and his drug use on the day of the crimes, he asserts that his written statement should have been suppressed.

Although intoxication and physical condition are factors to be considered in determining the voluntariness of a statement, "the test is whether there was sufficient mental capacity for the

4

defendant to know what he was saying and to have voluntarily intended to say it." Commw. v. DeWitt, 412 A.2d 623, 624 (Pa. Super. 1979). While Defendant testified at trial to his subjective belief that he was suffering from a concussion[5] at the time of his statement to police, he never presented any objective evidence in support of his suppression motion, or at trial to support this contention. In fact, no evidence was presented in support of the suppression motion or at the time of trial to lead one to the reasonable conclusion that the Defendant did not know what he was saying when he gave his statement, and/or that he did not intend to say it. Accordingly, the Court finds that the ruling on Defendant's suppression motion was proper, and that it was properly admitted into evidence at trial for the jury's consideration.

Moreover, even if there were sufficient evidence for the Court to come to opposite conclusion, "[w]here [as here,][6] an accused's trial testimony is substantially the same as a challenged pre-trial statement, the admission into evidence of an otherwise suppressible statement would, even if error, be harmless." Id. citing Commw. v. Hart, 370 A.2d 298 (Pa. 1977); Commw. v. Saunders, 331 A.2d 193 (Pa. 1975). Accordingly, the Court moves to the substance of Defendant's motions, beginning with his motion for judgment of acquittal with respect to the charge of Robbery.

> A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.
>
> The standard . . . [to be applied] in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder . . .

---

[5] N.T. Vol. II, 219:5-7.

[6] At trial, the Defendant testified that he gave a full written statement to the police on the day of the robbery, and that he was telling the truth when he gave the statement, and he was telling the truth on the stand. N.T. Vol. II, 221:1-7.

5

[Further,] the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commw. v. Hutchinson, 947 A.2d 800, 805-06 (Pa. Super. 2008).

In the instant case, Defendant was convicted under subsection (a)(1)(ii) of the Robbery statute, providing that "(1) A person is guilty of robbery if, in the course of committing a theft, he . . . threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S.A. § 3701 (a)(1)(ii). A theft is defined as the unlawful taking or exercise of control over the property of another with the intent to deprive him of it. 18 Pa.C.S.A. § 3921.

While the Defendant contends that the evidence presented at trial was insufficient as a matter of law to sustain a conviction on the charge, the Commonwealth contends otherwise. Upon review of the trial testimony, the Court concurs with the Commonwealth.

At trial, one of the victims, Geraldine Petry, testified at length about the robbery. Specifically, she testified that Defendant appeared at her residence located at 8644 Delaware Drive on April 29, 2014, professing an interest in purchasing the property, which was for sale at the time. N.T. Vol. I, 45:20; 47:25-48:25. At that point, Defendant told her that she would like to have an electrical and plumbing worker who had accompanied him see the home as well, to which she agreed. N.T. Vol. I, 49:49:14-22. Mrs. Petry and her husband showed both men around the house, after which time, the men left. N.T. Vol. I, 50:5-53:8. Sometime later that evening, Mrs. Petry noticed that her husband's wallet was missing. N.T. Vol. I, 55:10-15. She

6

called the police, and Officer Scott Miller came to the house and made a report. N.T. Vol. I, 55:16-56:15.

The following day, April 20, 2014, Defendant and his co-defendant, who had posed as the electrical and plumbing worker the day prior, returned to the Petry's residence. N.T. Vol. I, 58:8-10; 58:24. Upon seeing the Defendant approaching her home, Mrs. Petry immediately telephoned the police in an effort to get in touch with Officer Miller. N.T. Vol. I, 59:19-25. Officer Miller being unavailable, Mrs. Petry asked that he return her call. Id. at 59:23-25.

In the meantime, Mr. Petry had let Defendant into the house, and Defendant had stated that he was there to return Mr. Petry's wallet, which he had said he had found outside. N.T. Vol. I, 60:15-19. Defendant then stated that he had also returned to take clearer pictures of the master bathroom for his wife to review. N.T. Vol. I, 63:11-13. Mrs. Petry excused herself once more, placed another call in an effort to reach Officer Miller, and being unable to reach him, she returned to escort Defendant to see the master bathroom again. N.T. Vol. I, 63:15-25; 64:22.

Afterward, Mr. Petry escorted Defendant back to the foyer of her home, where she observed Mr. Clark, the co-defendant, in the house, wearing a pair of black gloves. N.T. Vol. I, 64:22-65:8. Mrs. Petry further testified that Mr. Clark then pulled out a gun, put it to Mr. Petry's head, and ordered him to "open the safe." N.T. Vol. I, 67:3-5. Defendant then put on a pair of gloves and ordered Mrs. Petry down the hall to the room containing the Petry's safe. N.T. Vol. I, 67:13-22. Mrs. Petry attempted to open the safe for her assailants, but finding herself unable to do so, she eventually gave the code to Defendant. N.T. Vol. I, 69:5-18. The Defendant opened the safe and removed a jewelry box, and then took Mrs. Petry's cellphone, which was lying nearby. N.T. Vol. I, 69:18-70:5.

Mrs. Petry further testified that Mr. Clark and Defendant then bound the Petrys with tape. N.T. Vol. I, 70:9-25. With respect to Defendant, Mrs. Petry specifically testified that he taped her hands, and retaped Mr. Petry's hands, which had already been bound by Mr. Clark. Id.

She then testified that the Defendant ordered the Petrys up and into the kitchen, where he took money and cards from Mrs. Petry's wallet, a telephone and a pair of earrings. N.T. Vol. I, 71:12-18. Defendant then directed the Petrys into their kitchen pantry. N.T. Vol. I, 74:18-75:75. Mrs. Petry then testified that Defendant stated to the Petrys that they had gotten a really good look at his face and that of Mr. Clark, but Mr. Clark, who was standing behind him at this time, said "you're a nice old couple. We're not going to hurt you." N.T. Vol. I, 75:6-8. Nevertheless, when asked whether she believed Mr. Clark, she testified that she believed that Defendant and Mr. Clark were going to "blow our brains out."N.T. Vol. I, 75:9-10. Notably, she also testified that Defendant had told the Petrys repeatedly at other points during the invasion that if they called the police, Defendant and Mr. Clark were "going to come back and . . . kill you." N.T. Vol. I, 76:13-22.

After recounting the events of the robbery itself, Mrs. Petry identified several items of property taken during the robbery. Similarly, Officer Scott Miller of the Washington Township Police Department testified that certain stolen items were recovered from Defendant by the State Police when he was arrested, in particular a bank card belonging to Mrs. Petry, a cell phone, and a pair of her gold earrings. N.T. Vol. I, 72:18-73:19; 80:12-83:20; 84:20-85:3; 121:5-7; 135:11-15.

By contrast, the Defendant testified that he was "stunned" when his co-defendant appeared in the Petry's house with a gun, and that Mr. Clark ordered him into the room with the safe along with the Petrys. N.T. Vol. II, 209:2-3, 17-18. He gave no details about taking any

8

items from the home, and he denied putting the Petrys in their pantry. N.T. Vol. II, 209:20-211:19; 214:25.

As the judges of the facts, the jury was free to reject or accept any of the evidence presented at trial. Taking as true the testimony of Mrs. Petry and Officer Miller, the evidence was clearly sufficient to sustain the robbery charge against Defendant. See Commw. v. Holley, 945 A.2d 241, 247 (Pa. Super. 2008); 18 Pa.C.S.A. § 3701 (a)(1)(ii). As such, Defendant's motion for judgment of acquittal on the charge of Robbery is hereby **DENIED.**

Defendant's second and final motion with respect to the Robbery charge is in the form of a motion for a new trial on the grounds that the verdict was against the weight of the evidence.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court . . . It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice.

Commw. v. Tejada, 107 A.3d 788, 795-96 (Pa. Super. Jan. 6, 2015) (citation and quotations omitted).

It is not enough to sustain a challenge to a verdict as against the weight of the evidence that one could arrive at a different conclusion on the same facts. Commw. v. Sullivan, 820 A.2d 795 (Pa. Super. 2003). Rather, the evidence must be so "tenuous, vague and uncertain" as to shock the conscience of the Court. Id. at 806. Stated another way, "the role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice." Commw. v. Landis, 89 A.3d 694, 699 (Pa. Super. 2014) (citation omitted).

As discussed in the context of Defendant's motion for judgment of acquittal on the charge, there was sufficient evidence presented at trial to support the conviction. Upon

9

consideration of the evidence presented at trial, the jury's guilty verdict on the robbery charge fails to shock the Court's conscience, and the motion for a new trial is **DENIED**.

Turning to Defendant's motion for judgment of acquittal with respect to the Aggravated Assault charge at docket #2115-2014, the Court begins by noting that as charged against Defendant "[a] person is guilty of aggravated assault if he . . . attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty." 18 Pa.C.S.A. § 2702(a)(3). The instant charge arises from Defendant's arrest and apprehension shortly after the robbery at the Petry's residence on April 30, 2014.

Pennsylvania State Trooper Jeremy Hayes testified to these events at trial. Specifically, he testified that after encountering Defendant's vehicle and effectuating a traffic stop, Defendant, who was driving, and his co-defendant, attempted to flee from the scene on foot. N.T. Vol. II, 162:20-166:16. After chasing Defendant for nearly a block, the Trooper deployed his taser, which had the effect of slowing Defendant down slightly. N.T. Vol. II, 167:3-19. The Defendant then turned back toward the Trooper, reaching out toward him. N.T. Vol. II, 167:21-23. In response, the Trooper deployed his baton and attempted to strike Defendants hands and arms and commanding the Defendant, who was still moving toward him, to get to the ground. N.T. Vol. II, 168:168:10-23. The Defendant then made an attempt to get back into his vehicle, at which time the Trooper got close enough to the Defendant that the Defendant was able to grab a hold of the Trooper's baton, and a struggle ensued between them for control of the baton. N.T. Vol. II, 169:16-24. The Defendant continued to struggle with the Trooper over the baton even after backup arrived, until the Trooper, with the assistance of the additional personnel, was able to

handcuff the Defendant and place him in custody. N.T. Vol. II, 170:6-171:25. As a result of the struggle, the Trooper sustained lacerations to his hands and knees. N.T. Vol. II, 171:5-10.

By contrast, the Defendant testified that once he left the Petry's residence and Trooper Hayes conducted a traffic stop, he never did anything besides try to get away from the Trooper. N.T. Vol. II, 217:19. He testified that although the Trooper hit him, he never swung at, kicked, bit or kneed the Trooper. N.T. Vol. II, 217:12-22. Consequently, he argues that the Court should enter judgment in acquittal in his favor with respect to the Aggravated Assault charge.

While Defendant asserts that this testimony presented at trial was insufficient to sustain an aggravated assault charge, it is clear that that it is sufficient. The required mens rea for aggravated assault is that the defendant "attempts to cause or intentionally or knowingly causes" bodily injury to an officer in the course of performing a duty. The evidence clearly establishes that the Trooper is an officer of the law, and that he was in the midst of performing a duty when he was injured by the Defendant. When the victim of an aggravated assault is an officer, the defendant need only knowingly or intentionally attempt to cause him bodily injury. Commw. v. Flemings, 652 A.2d 1282, 1284 (Pa. 1995). There need be no actual injury, and if there is an injury, it need not be serious. Id.

Given the Trooper's testimony, which was buttressed by a video played for the jury where they were able to witness portions of the struggle, where Defendant was actively engaged, the Court believes that the evidence of presented at trial was sufficient to sustain an aggravated assault charge against the Defendant. As such, his motion for acquittal on the charge is **DENIED.** To the extent that Defendant also seeks a new trial based on his contention that the

11

jury's verdict on the Aggravated Assault charge was against the weight of the evidence,[7] the same is **DENIED** upon the Court's finding that the verdict was supported by sufficient credible evidence and the jury's verdict does not shock the Court's conscience.

By his final post-trial motion, Defendant asserts that the sentence imposed by the Court was excessive and that it failed to take into account his rehabilitative needs. "When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa. C.S.A. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. And, of course, the court must consider the sentencing guidelines." Commw. v. Caldwell, -- A.3d -- (Pa. Super. May 29, 2015).

At the time of his sentencing, Defendant had the highest possible prior record score, a RFEL, and because he had a prior conviction for a violent crime, he was subject to ten-year mandatory minimum sentences on the two counts of Robbery and two counts of Conspiracy to Commit Robbery. Sentencing Transcript, 3:11-15; 3:19-7:22. Accordingly, the Court had considerable sentencing authority.

Prior to imposing sentence, the Court ordered and considered a presentence investigative report dated February 27, 2015, a psychiatric report dated January 31, 2015, a psychological report dated January 15, 2015, and a drug & alcohol evaluation dated February 18, 2015.

At the sentencing hearing, the Court heard and considered the testimony of the Defendant's son, Dillon Bright, who testified that the Defendant was "the best man . . . and the best father ever." Sentencing Transcript, 9:9-11. The Court also heard and took into account the record made by defense counsel with respect to an eight year period from 2004 to 2012 when the Defendant was crime-free, as well as the Defendant's lengthy struggle with a heroin addiction;

---

[7] Although counsel briefed the issue, the Defendant's Post Trial Motion does not appear to include a motion for a new trial with respect to the Aggravated Assault charge. Defendant's Post Sentence Motion Pursuant to Pa. Rule of Criminal Procedure 720, ¶¶12-15.

he heard and took into account the comments of counsel for the Commonwealth. <u>Sentencing Transcript</u>, 10:6-8, 9-16; 16:5-15. Finally, the Court heard and took into consideration the Defendant's remarks on his own behalf, and the remarks of Mrs. Petry as one of the victims of the robbery. <u>Sentencing Transcript</u>, 11:4-12:2; 12:11-13:1; 13:15-16:2.

In imposing sentence, the Court began by noting the Defendant's repeated placement of blame on his co-defendant. <u>Sentencing Transcript</u>, 16:19-25. The Court then took note of the Defendant's lengthy criminal record, comprised of a juvenile offense and ten prior adult convictions, not less than five periods of incarceration in the Northampton County Prison, and two prior terms in SCI. <u>Sentencing Transcript</u>, 17:1-5. Next, the Court detailed the circumstances of the crimes for which the Defendant faced sentencing. The Court stated:

> You bound [the victims'] hands and mouths with duct tape, locked them in the closet, as you and your co-defendant ransacked the house and stole things, ripping the cross off of Mr. Petry's neck, a person already frail from the ravages of pancreatic cancer. And then after resisting arrest, you remain convinced of your story that you were assaulted by the police and also complain that you now suffer from migraines because you were struck with a police baton, which I would submit wouldn't have happened if you had not resisted arrest. So it's just a continuing story of your life of criminal conduct. It certainly gives me no pleasure to impose the sentences I'm about to impose, but *I think that they are necessary given your inability to comply with what we expect from people that live in an orderly society.*

<u>Sentencing Transcript</u>, 17:10-23 (emphasis added).

The Court then imposed sentence and made a record with respect to Defendant's awareness of his post-trial rights, which Defendant acknowledged on the record. <u>Sentencing Transcript</u>, 17:24-20:19.

Although Defendant contends that the Court did not take his rehabilitative needs into account in fashioning the sentence imposed, the record belies that contention. As set forth *supra*, the Court chronicled the Defendant's criminal history, and concluded on the record that the term

13

of imprisonment he imposed was "necessary" given the Defendant's "inability to comply with what we expect from people that live in an orderly society." Sentencing Transcript, 17:22-23. The Court's comments in this regard are addressed specifically to the Defendant's rehabilitative needs. That the Court and the Defendant have a difference of opinion as to what those needs are does not render the Court's sentence excessive and does not entitle Defendant to reconsideration or modification of his sentence. Upon reflection, the Court holds the same view of the Defendant's rehabilitative needs, the community's need for protection, and the gravity of the offense that it did at the time it imposed sentence. Consequently, Defendant's motion seeking reconsideration and modification of his sentence is **DENIED.**

**BY THE COURT:**

CRAIG A. DALLY,                                           J.

14